Shipman, Circuit Judge.
This is a bill in equity, which is founded upon the alleged infringement of letters patent to John E. Atwood, No. 253,572, dated February 14,1882, for an improved support for spindles in spinning machines. The application was filed February 27, 1880. The invention was made in July, 1878, and antedates the patents to John Birkenhead, No. 214,750; the English patent to Haddan, sealed February 7, 1879, and the two patents to J. E. Braunsdorf, Nos. 214,-355 and 214,356,—which were all applied for in or after September, 1878. The step of a spindle is the lower end of its vertical shaft, and revolves within the step bearing in which it is located. The bolster of a spindle is its cylindrical part, and revolves within the bolster bearing, which is a ring surrounding the bolster. Formerly the step bearing was placed in a horizontal rail, while the bolster bearing was mounted in another rail, supported above the step rail, each of these bearings being nearly rigid. The spindle carries a bobbin and its yarn load, and neither of the three is made perfectly true, and therefore neither is equally balanced. The inequalities of the load create a tendency to vi *591 brations or “gyrations” of the spindle, which must have high speed, if rapid work is to be attained. A construction of the bearings which should permit the spindle to yield laterally, and thus permit greater speed, was important. The bolster rail, upon which was mounted a nearly rigid bolster bearing, was therefore disused, and a spindle was constructed, and is commonly used, with a sleeve attached to the spindle blade so as to encompass a support containing the bolster bearing. The step bearing is in the closed end of the bolster support, and the frame requires only one spindle rail.
The Atwood invention is of this class of spindles, and was an improvement upon the spindle support of Francis J. Rabbeth. which was invented in 1878, and was patented in 1880, by letters patent No. 227,-129. The priority of the Rabbeth invention is admitted in the Atwood patent. The Rabbeth structure had a supporting tube rigidly connected with the rail; a bolster bearing, which was a thin tube affording a lateral bearing surface for the spindle; a yielding cushion between the bolster bearing and the supporting tube; and a step bearing within the supporting tube. This tube may constitute the step bearing, but the step bearing and the bolster bearing are separate pieces, and consequently the spindle and the bolster bearing can vibrate in all directions. This spindle had a rapid sale. It had great capacity for speed, because the yielding packing or cushions cushioned its vibrations; but, using the language of Gen. Draper, of the Hopedale Mill, whose firm built and sold it, and whose experience in spindle manufacture makes him a very competent witness, “owing to the narrow space in which the cushion is necessarily confined, it will not serve its cushioning purpose satisfactorily, if the vibrations or gyrations become extreme.” The packing was beaten upon as the spindle vibrated, “became thin, and was cut in two at the space between the bolster and the step.” The specification of the Atwood patent says:
“The characteristic feature of my present invention is a supporting tube, which is flexibly mounted with relation to the spindle rail, and contains the step and bolster bearings for the spindle, so that the latter and said tube may move together laterally in all directions during the self-adjustment of the spindle, while carrying an unequally balanced bobbin and its yarn, instead of relying upon the movement of the spindle and its bearings within and independently of the supporting tube, as heretofore in this class of spindles. By reason of my improvement, the means whereby the movable capacity or flexibility of the spindle is afforded are rendered openly accessible, and more easily renewed, if need be, than heretofore; and, further, elastic materials may be successfully employed, which would be liable to injury and rendered inelastic by oil if located within the supporting tube, as heretofore. I am also enabled to readily graduate the degree of flexibility of the spindle with relation to the spindle rail, so as to accommodate the self-adjusting capacity of the spindle to the various conditions incident to its use in working with bobbins materially differing in size and weight. All of these advantages are due to the novel characteristic feature before referred to.”
The claims of the patent, which are said to have been infringed by the defendant, are as follows:
*592 “ (2) The combination, substantially as hereinbefore described, with a spindle rail, of a sleeve whirl driven spindle, a base piece rigidly fixed to the spindle rail, and a combined bolster and step mounted loosely in said base piece, and secured thereto by a yielding attachment, as set forth. (3) The combination, substantially as hereinbefore described, of a spindle rail of a spinning machine, a spindle, and a supporting tube, flexibly mounted with relation to the spindle rail, and containing step and bolster bearings. * * * (5) The combination of the spindle rail, the spindle, the supporting tube, loosely mounted with relation to the rail, and containing the step and bolster bearings for the spindle, the spring, and the nut for compressing it, substantially as described.”
The bolster bearing and the step bearing are formed in one tube, called the supporting tube, and consequently move together, and are in line with each other. The connection between this tube and the rail is yielding. A hole larger than the tube is bored through the rail, or through a base piece in the rail, and the lower end of the connecting tube is extended through the rail far enough to enable the tube to be secured by a nut at its lower end, and by a spiral spring surrounding the tube below the rail. “The spring serves as a cushion against the rocking or tipping of the spindle,” and is strong enough to resist a heavy strain. By altering the position of the nut, the pressure of the spring can be adjusted to different loads upon the spindle. In one form of the device, a cushion of leather is placed between the flange of the tube and the top of the rail. In another form, shown in Fig. 4 of the drawings, this annulus is omitted; the tube does not rest upon the rail, but upon a base tightly secured in the rail. The spiral spring bears against the bottom of the base instead of against the bottom of the rail. The supporting tube, within which are formed both the step bearing and the bolster bearing, and flexibly mounted upon or in relation to the supporting rail, the tube moving out of position under the influence of the vibrations of the spindle, together with the manner in which the tube is secured to the rail, so that graduated pressure can be given and strength can be secured, are the important features of the patented device. It had room and strength to resist heavy strains, speedily received favorable recognition and success, and has gone largely into use. The combined bolster bearing and step bearing in one tube, which is flexibly secured to the base piece or rail, distinguishes it from the Rabbeth device.
The defense is twofold: (1) That the improvement is not a patentable invention; and, (2) if it is, it is of so narrow a character that there is no infringement. Upon the question of patentability, the contention is that self-adjusting spindles and supporting tubes, which contain both step and bolster bearing, are old, and that a spiral spring and nut, for the purpose of a yielding support to a sleeve or a spindle, are also old, and that there was no invention in moving the flexible connecting means from a point adjacent to the rail, as in the Danforth spindle, or from within the tube, as in the Rabbeth spindle, and pulling it on the outside of the tube, .and below the rail. This statement gives but an imperfect account and idea of the patented invention. There were in pre *593 vious structures—for instance, in the Rabbeth device—a tube which might be said to contain or include the two bearings for step and bolster, but there was no tube which combined the two bearings in one piece of metal, so that both moved with the spindle and in line with each other, whereby the danger that one of the bearings would bind upon the spindle was removed. It is true that prior devices contained somewhere a yielding spring and a nut. The spring or cushion of the Rabbeth device has already been explained. The unpatented Danforth spindle of 1842 had a dead spindle with a rotating sleeve, which carried the bobbin and was itself moved up and down on the dead spindle by a traveling rail, with which it was connected by a spring plate, spring, and nut. This spindle was of an entirely different class from that of the Rabbeth and Atwood spindles, it had no supporting tube, and the mechanism contains no idea of adapting itself to the vibrating movements of the rotating sleeve. The fact that it had a spiral spring has no bearing upon the question of patentability. The flexible support of the Atwood tube-below the rail is far more than a change of the position of the Rabbeth cushion from the inside of his tube. The result is to cushion, but thetnethod by which the cushioning is produced is very different.
The spindle of the defendants does not have the washer below the-flange of the tube, and therefore does not infringe the first and fourth claims of the patent. Instead of screwing the base piece of drawing No. 4 into the rail, the defendant inserts in the hole through which the base piece would pass an oil cup, which is also secured in the rail with a set. screw. It is the Atwood spindle of drawing No. 4, plus an oil cup, and,, if the oil cup was omitted, it is substantially admitted that infringement would exist. But it is claimed that the improvement, if patentable at all, is a narrow one, and consists in the specific arrangement of the flexible connection so placed as to secure certain advantages, and that, if another mode is adopted which does not secure these advantages, there is no infringement. Surrounding the bottom of the tube with a closed cup does prevent the nut and spring from being easily accessible, and prevents the facility and promptness with which the flexibility of the spindle could be graduated; but a copyist cannot escape the charge-of infringement by adding to his copy a feature which hinders the patented combination from exhibiting some of its minor advantages. Let there be a decree for an infringement of the 2d, 3d, and 5th claims, and for an accounting.