TAYLOR et al. v. SAWYER SPINDLE CO.

(Circuit Court of Appeals, Third Circuit. June 30, 1896.)

1. PATENTS—INFRINGEMENT SUITS—LACHES.
Mere delay in prosecuting infringers, unaccompanied by circumstances amounting to an equitable estoppel, will not prevent a patent owner from maintaining suits for equitable relief. *Held*, therefore, that a delay of over seven years after issuance of the patent, before the institution of any infringement suits, was not sufficient ground for refusing either an injunction or an accounting, as against an infringing corporation organized more than a year after the institution of the first suit against another infringer. 69 Fed. 837, affirmed.

2. SAME—INFRINGEMENT.
A machine which contains all the essential elements, or their equivalents, of the patented machine, infringes the patent, notwithstanding mere differences of form.

3. SAME—INVENTION—SPINNING MACHINES.
A new combination and arrangement of old parts, whereby spinning spindles, instead of running in rigid bearings, are flexibly mounted on the rail, so as to allow of greatly increased speed of revolution, *held* to disclose the exercise of inventive faculty; it appearing that this result had long been sought by inventors, and that the superiority of the device had caused its general adoption and large use by silk spinners. 69 Fed. 837, affirmed.

4. SAME—ANTICIPATION—DOUBLE USE.
The use of yielding attachments, with adjustable devices, applied to the combined step and bolster bearings of a spinning spindle, was not anticipated by the use of similar devices in centrifugal machines, or hydro-extractors, for drying sugar or creaming milk. The two classes of machines are so different in size, structure, and the uses to which they are adapted, that it is not a case of double use. Potts & Co. v. Creager, 15 Sup. Ct. 194, 155 U. S. 607, applied.

5. SAME—CONSTRUCTION OF CLAIMS—OMISSION OF ELEMENTS.
In the claims of a patent for a combination of a spindle, its supporting tube, and devices for flexibly mounting it upon the rail, there is no necessity for expressing in terms the devices for revolving the spindle. Any appropriate means for operating it will be understood, and hence the omission of the sleeve whirl from the claims does not affect their validity.

6. SAME—SPINNING SPINDLES.
The Atwood patent, No. 253,572, for "improvements in the supports for spindles for spinning machines," *held* valid and infringed as to claims 3, 4, and 5. 69 Fed. 837, affirmed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

Edward Q. Keasbey, for appellants.

Frederick P. Fish, for appellee.

Before ACHESON, Circuit Judge, and WALES and GREEN, District Judges.

WALES, District Judge. This is an appeal from the decree of the United States circuit court for the district of New Jersey, made

October 19, 1895, sustaining the validity of letters patent No. 253,-572, issued to John E. Atwood, dated February 14, 1882, for "improvements in the supports for spindles for spinning machines," declaring that the defendant corporation had infringed the third, fourth, and fifth claims of the patent, and ordering an accounting of profits from March 23, 1891, the date of the organization of the defendant company. The patented improvements pertain to what are known as "self-adjusting spindles," and relate "to that class of such spindles having step and bolster bearings within a supporting tube." The specifications give the following description of the invention:

"The characteristic feature of my present invention is a supporting tube which is flexibly mounted with relation to the spindle rail, and contains the step and bolster bearings for the spindle, so that the latter and said tube may move together laterally in all directions during the self-adjustment of the spindle, while carrying an unequally balanced bobbin and its yarn, instead of relying upon the movement of the spindle and its bearings within, and independently of, the supporting tube, as heretofore in this class of spindles. By reason of my improvement, the means whereby the movable capacity or flexibility of the spindle is afforded are rendered openly accessible, and more easily renewed, if need be, than heretofore; and, further, elastic materials may be successfully employed, which would be liable to injury, and rendered inelastic, by oil, if located within the supporting tube, as heretofore. I am also enabled to readily graduate the degree of flexibility of the spindle with relation to the spindle rail, so as to accommodate the self-adjusting capacity of the spindle to the various conditions incident to its use in working with bobbins materially differing in size and weight. All of these advantages are due to the novel, characteristic feature before referred to."

The claims in issue are these:

"(3) The combination, substantially as hereinbefore described, of a spindle rail of a spinning machine, a spindle, and a supporting tube flexibly mounted with relation to the spindle rail, and containing step and bolster bearings.

"(4) The combination, substantially as hereinbefore described, of a spindle rail, a spindle, a supporting tube containing step and bolster bearings, flexible connections between said tube and the spindle rail, and adjusting devices for varying the degree of flexibility of the supporting tube and spindle therein.

"(5) The combination of the spindle rail, the spindle, the supporting tube, loosely mounted with relation to the rail, and containing the step and bolster bearings for the spindle, the spring, and the nut for compressing it, substantially as described."

The validity of the complainants' title is admitted. The first defense to the suit is that of laches, which was urged with much earnestness, and is made on the ground that the complainants had deprived themselves of relief in a court of equity by neglecting to prosecute any one for infringement until more than seven years after the date of the patent, and that the defendant had no notice of their claims until more than ten years after that date. It is alleged that the complainants permitted the manufacture and sale of the spindles complained of to be carried on for many years by men who were ignorant of their claim, and allowed the persons composing the defendant corporation to purchase the business without giving them notice; that spindles mounted flexibly, like those now complained of, were made and sold by the Cooke Locomotive & Machine Company, continuously and to a large extent, from August, 1881, until they sold the business to Mr. Taylor, Mr. Shaw, and Mr.

Cocker, and that the latter continued to make and sell the same spindles until the defendant corporation was formed, March. 23, 1891,—the date from which infringement is charged in the bill. The first suit brought against any infringer of the Atwood patent was that of these complainants against W. G. & A. R. Morrison Company, September 2, 1889, in the district of Connecticut (52 Fed. 590), in which the validity of the patent was sustained, and there was a decree for the infringement of the second, third, and fifth claims, and for an accounting. Subsequently another suit was brought by complainants against the Morrison Company for infringement of the same patent by types of modified spindles manufactured by them, in which, on motion for a preliminary injunction, the patent was upheld. 51 Fed. 693. The theory of this defense is that there is no absolute right to an injunction on proof of infringement of a patent; that the complainant must present a case for equitable relief, and if it appears by the bill, or by the evidence, that by reason of his delay he is not entitled to the aid of a court of equity, it will be refused on final hearing, as well as on motion for a preliminary injunction. It is insisted that, if the Atwood patent has been infringed by the defendant, the only remedy for the complainants would be by an action at law for damages, and that the only possible relief obtainable in the present suit would be an injunction against future infringement.

It has never been held that mere laches, unaccompanied by circumstances which amount to an equitable estoppel, shut out a party from all relief in a court of equity. Knowledge of and long-continued acquiescence by a complainant in an infringement may, in special cases, be fatal on a motion for a preliminary injunction, but will not, on a final hearing, prevent the court from granting such relief as may be just and equitable. This is the general rule which is recognized in the authorities which are cited in the briefs of counsel. There is a want of satisfactory proof that the defendant acted in ignorance of the rights of the complainants, or that the latter had always had full knowledge of the alleged infringement. Notice was given to the public at large that the spindles were patented, and the defendant could not have been blind to the fact that the new spindles had gone into extensive use. The testimony of Mr. Taylor, of the defendant corporation, had reference to a time prior to the issue of the patent, when, as he says, Mr. Atwood saw the infringing spindles, or ones just like them, in operation in Paterson, and made no claim that the invention was his; but it is not pretended that Taylor, Shaw, and Cocker, or either of them, at the date of their incorporation, in March, 1891, did not know of the complainants' claims, for the suit against the Morrison Company had then been pending for more than a year. In Kittle v. Hall, 29 Fed. 508, it was held that, while long acquiescence might defeat a bill for infringement, no precedent had been discovered for the dismissal of a bill for so short a period as seven years, and that the defendants had not been misled, but knew of the plaintiff's rights. In McLean v. Fleming, 96 U. S. 245, the court said:

"Equity courts will not, in general, refuse an injunction on account of delay in seeking relief, where the proof of infringement is clear, even though the delay may be such as to preclude the party from any right to an account for past profits."

To the same effect are the cases of Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143; Price v. Steel Co., 46 Fed. 107; New York Grape-Sugar Co. v. Buffalo Grape-Sugar Co., 18 Fed. 638; Gilmore v. Anderson, 38 Fed. 846; Brush Electric Co. v. Electric Imp. Co., 45 Fed. 241. In the last-cited case the court remarked that the doctrine of laches is generally applicable to preliminary injunctions only. In Menendez v. Holt, supra, the court, in discussing the question of laches, said:

"Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so.long, and under such circumstances, as to defeat the right, itself. Hence, upon an application to stay waste, relief will not be refused on the ground that, as the defendant had been allowed to cut down half the trees upon the complainants' land, he had acquired by that negligence the right to cut down the remainder [citing Attorney General v. Eastlake, 11 Hare, 205]. * * * Acquiescence, to avail, must be such as to create a new right in the defendant. Where consent by the owner * * * is to be inferred from his knowledge and silence merely, it lasts no longer than the silence from which it springs. It is in reality no more than a revocable license."

The defendant asserts that the complainants are not entitled to an accounting for profits; but the decree of the circuit court orders an accounting only from the date of the defendants' incorporation, from and after which time there were no laches, as complainants had already begun their suit against the Morrison Company. This was sufficient notice to the defendant that the validity of the patent was in litigation, and thus takes away the excuse of ignorance for continuing the infringement. There is no proof of nonuser or abandonment by the complainants, nor of any act or omission of theirs which could have induced the defendant to believe that it would not be held liable for manufacturing and selling the infringing articles. The evidence falls far short of proving an estoppel, or of proving such delay or acquiescence on the part of the complainants as should defeat the present suit.

Infringement is not seriously disputed; the defense on this point being that, if the patent is sustained at all, it must be confined to the precise form described and shown in the specifications and drawings. The specifications state:

"The spindle chosen to illustrate my invention is of that well-known variety which is constructed with a sleeve attached to the spindle blade, extending downwardly so as to encompass a support containing the bolster bearing, and which has a driving whirl located at or near the base of such sleeve. Such spindles have their foot rests in the base or closed end of the bolster support, and the spinning frame therefore requires only one spindle rail. As shown in all the figures of the drawings, A represents the spindle; B, the sleeve; and b, the whirl thereon. As shown in Fig. 2, the spindle is mounted in a supporting tube, C, which extends both above and below the spindle rail, D, and furnishes an upper or bolster bearing for the spindle in its portion, c, and a lower step bearing in its portion, c'. The supporting piece or tube, C, containing as it does the bolster and step bearings for the spindle, constitutes a combined bolster and step, which moves laterally with the spindle, in all directions, during its self-adjustment.

FIG.3.

FIG.1.

FIG.4.

FIG.2.

"In order to permit the supporting tube, C, to move with the spindle as described, the spindle rail, D, has a circular opening, as at d (Figs. 1 and 2), which has a diameter slightly greater than the diameter of the lower portion, c', of the tube, C; so that between their coincident surfaces an ample annular space is afforded to allow of the desired lateral movement of said tube, and the spindle therein. For so securing the supporting tube and its spindle to the rail, D, that they will nevertheless be capable of the requisite lateral movement incident to the self-adjustment of the spindle, the lower end of the tube, c', is screw-threaded, and provided with a nut, E. A strong spiral spring, F, the tension of which may be variably regulated by said nut, surrounds said portion of the supporting tube between the nut and the under side of the rail; and the base or flange portion, c, of said tube is seated upon a washer or annulus, G, of flexible or elastic material, placed between said base and the top of the rail."

The defendant's spindle is almost identical with the Atwood spindle, differing only in form, but containing all the elements, or their equivalents, of the latter. The differences between the two are immaterial. In defendant's spindle a collar and set screw are substituted for the nut below the spring, and the whirl is attached directly to the shaft of the spindle; the supporting tube being made in two parts, and then rigidly fastened together by two arms, which bridge over the whirl, thus practically making one tube for the step and bolster bearings. The defendant has adopted the essential elements of the Atwood combination, namely, the flexibly mounted supporting tube, containing both step and bolster bearings, which is connected with the rail by a strong spiral spring and an adjusting nut. The defenses chiefly relied on are want of invention (as distinguished from mechanical skill) anticipation, and because the claims are inoperative and void. Atwood had invented his spindle, and put it into use, as early as July, 1878, although he did not make application for a patent until February 27, 1880. Prior to his invention, spindles had been run in rigid bearings; and their speed was limited on account of their tendency, under a high rate of revolution, to gyrate and cause severe pressure on the bearings, developing friction, and throwing off the bobbins. The production of a spinning frame is in direct ratio to the speed of the spindles, and every increase in speed at which the spindle can be practically run makes a proportionate increase in the production; and thus it was that inventors had long been endeavoring to mount a spindle in such a way as to obtain a greater rate of speed than was possible with the then existing machines. Numerous patents had been granted for improvements in these machines, but none of them contained the device of Atwood, who was the first to combine the step and bolster bearings of the supporting tube with a flexibly mounted spindle, whose rotary speed was only limited by relation to other parts of the machinery. Invention and patentability, however, are denied on the ground that Atwood's combination is only a new arrangement of well-known parts, which had already been combined to accomplish the same result, and that its only novelty consists in the location of the yielding attachments between the supporting tube and the rail, and the use of adjusting devices for varying the degree of flexibility,—in substance, nothing more than putting a cushion or spring of some kind between the journal box of a revolving shaft and the fixed base of support, and therefore showing only mechanical

skill. In support of this proposition, reliance is placed on the patent of F. J. Rabbeth, No. 227,129, dated May 4, 1880, for "a spinning spindle and bearing," and on certain prior patents for centrifugal machines. The essential difference between the Rabbeth spindle and the Atwood spindle is that the supporting tube in the former is rigidly fixed in the rail, while in the latter it is loosely or flexibly mounted on the rail. This, it has been well said, is the gist of the Atwood improvement, the value and superiority of which have been proved by its general adoption and large use by silk spinners. Its novelty and utility are thus placed beyond doubt, and that it required the exercise of inventive faculty to produce it appears from the prior history of the art. It would require too much space to review the long list of patents set out in the answer as being suggestive of the one in suit, only a few of which, however, are referred to in the brief of defendant's counsel. It may be sufficient to say that, with all the information derived from the alleged anticipations, it does not appear that any one, before Atwood, had caught the idea, and reduced it to practice, of arranging and combining old elements in such a manner as to produce a flexibly mounted spindle. He invented a new arrangement of parts, by which a new relation was formed between the rail and the supporting tube, and by that means superseded the former rigid-bearing spindle. It was a decided advance over all other supports, and that it required more than mechanical skill is evidenced by the fact that it had escaped the notice and observation of numerous inventors whose attention had been directed for many years to the achievement of the same or a similar result as the one reached by Atwood. In coming to this conclusion, we have not overlooked the contention that the use of yielding attachments, with adjustable devices, applied to the combined step and bolster bearings of a spinning spindle, was anticipated by the use of similar devices in centrifugal machines, or hydro-extractors, for drying sugar or creaming milk. In this connection, reference is made to four patents for centrifugal machines, namely, Weston's (No. 82,049), of September 8, 1886; Cramer's (No. 144,319), of November 4, 1873; English patent to Day (No. 772), of 1874; and Tolhurst's (No. 199), of January 8, 1878. It is claimed for the defendant that the Atwood spindle and the centrifugal machines contain the same combination of elements for the purpose of flexible adjustment to an unbalanced load; the only difference being that in the one case it is a spindle flexibly mounted upon a rail, and in the other a larger revolving shaft flexibly attached to the floor. The argument deduced from this is that mere changes of use and dimensions, without any change of function, do not involve invention; in other words, that the Atwood adjustable device is only a "double use" of that made use of in the centrifugal machines for the same purpose. The Cramer patent is particularly relied on in support of this proposition, and may be taken as a fair representative of the class to which it belongs. The two classes of machines are so different in size, in structure, and in the uses to which they are adapted, that, as Mr. Southworth, a witness for the complainants, said, "the inspection of a centrifugal machine would not lead a mechanic to use a flexible spindle; but would be likely to deter one from even experimenting in that di-

rection." The object of flexibly mounting the hydro-extractor is to prevent the jar and concussion which arise from the great weight of the machine, and not to increase its speed. On the other hand, the flexible bearings in the spinning spindle are made use of to increase its speed, for the spindle can run as well at a speed of 5,000 revolutions in a rigid bearing. A careful examination of the specifications and drawings of the Cramer patent does not induce the belief that Atwood could have derived any aid from that source in contriving his spindle. Centrifugal machines had been in use in many mills where yarn was spun, and in shops where machinery was made for spinning yarn, for years before the Atwood improvement was invented, and no one ever supposed that a similar construction could be applied to a spinning spindle. One of the objects to be attained by loosely mounting the spindle in the rail was to maintain the spindle in a perpendicular position, and to diminish its inclination to gyrate. It is obvious that the functions of the one machine are different from the functions of the other, and it is also apparent that the means adopted by Cramer to produce a flexible adjustment differ from those adopted by Atwood for a similar purpose. The specifications of the Cramer patent state "that bolts, b, are provided with large heads and a washer, and each is encircled for a portion of its length by a heavy elastic cushion, preferably resembling a rubber car spring. These bolts are passed upward through holes in the platform, and are provided with nuts at their upper ends, and which, on being screwed down, securely and safely fasten the machine to the platform." In contrast to this, the spiral spring in the Atwood patent pulls the supporting tube down upon the rail, so as to prevent the tipping of the spindle; and, all parts of the machine being openly accessible, the degree of flexibility of the spindle with relation to the rail can be readily graduated. The Cramer patent is only "a paper patent," and has never been put into practical use, and may be considered as an abandoned experiment. It belongs, however, to the same class as the other centrifugal machines which have been referred to as anticipations of the flexible devices of Atwood, to show that the latter are only reproductions of the former. As we have seen, they are very different. The clamping nut and rubber spring used by Cramer have little or no analogy to the spiral spring, and the provision made for regulating its tension, as described in the Atwood patent. The centrifugal machine must have a strong foundation to rest upon, and to which it is "securely and safely" fastened, while the spinning spindle is sustained in mid-air by the rail on which it is loosely mounted. But, admitting the existence of a closer resemblance and analogy between the two classes of machines than have been shown, it by no means follows that the Atwood spindle would come within the rule of "a double use," and thus fall short of invention and patentability. In the recent case of Potts & Co. v. Creager, 155 U. S. 607, 15 Sup. Ct. 194, Mr. Justice Brown, speaking for the court, said:

"Indeed, it often requires as acute a perception of the relations between cause and effect, and as much of the peculiar inventive genius which is a characteristic of great inventors, to grasp the idea that a device used in one art may be made available in another, as would be necessary to create the

device de novo. And this is not the less true if, after the thing had been done, it appears to the ordinary mind so simple as to excite wonder that it was not thought of before; but the decisive answer is that with dozens, and perhaps hundreds, of others laboring in the same field, it had never occurred to any one before. * * * As a result of the authorities upon the subject, it may be said that, if the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old device produce a new result, it may at least involve an exercise of the inventive faculty."

To the same effect are Du Bois v. Kirk, 158 U. S. 58, 15 Sup. Ct. 729, and Tannage Patent Co. v. Zahn, 17 C. C. A. 552, 70 Fed. 1003. In Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, the court held it—

"not sufficient, in order to constitute an anticipation of a patented invention, that the device relied upon night, by modification, be made to accomplish the function performed by that invention, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such function."

As a further defense it is contended that the claims sued on must be construed as containing the sleeve whirl, in which case they are not infringed, because the defendant does not use the latter, or else they have no operative mechanism, and are void. The law on this subject is too well settled to be open for discussion. A patentee is not required to claim the entire machine in each claim. Each of the claims at issue is for a complete combination of the spindle and its supporting tube and devices, and there was no necessity for expressing in terms the devices for revolving the spindle. Any appropriate means for operating it will be understood. The omission of the sleeve whirl does not affect the validity of either one of the claims, which belong to that class where reference may be made to the specifications to supply in a claim what it is plain, to any one skilled in the art. is a necessary incident. Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co.. 10 C. C. A. 194, 61 Fed. 970; Deering v. Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118. The decree of the circuit court is affirmed.