### BOYER v. KELLER TOOL CO.

(Circuit Court of Appeals, Third Circuit. December 21, 1903.)

No. 1.

1. PATENTS—CONSTRUCTION OF CLAIMS—LIMITATION BY PROCEEDINGS IN PATENT OFFICE.

The claims of a patent are not narrowed by statements made on an argument by counsel before the Patent Office to obtain a reconsideration after the application has been rejected, where no changes are made in the claims.

2. SAME—SPECIFICATIONS—"SUBSTANTIALLY AS DESCRIBED"—LIMITATION TO PARTICULAR FORMS—INFRINGEMENT.

Where, in the specifications, a certain part of a mechanical combination is said to consist preferably of the shape approximating that shown in the drawings, but the inventor expressly declares, with regard to his invention generally, that by describing in detail any particular arrangement he does not intend to limit himself beyond the terms of his several claims or the requirements of the prior art, a claim is realized and infringed by any construction of the general character called for which fulfills its terms, notwithstanding the words "substantially as described" at the end.

3. SAME—DUPLICATION OF CLAIMS.

Where a special form of mechanical construction, the same as that described in the specifications and shown in the drawings, is embodied in a certain set of claims, it is not, in order to avoid duplication, if for no other purpose, to be written into other claims, where a device of the general character called for is sufficient to satisfy their terms.

4. SAME—INFRINGEMENT—PNEUMATIC TOOL.

The Boyer patent, No. 537,629, for a pneumatic tool, was not anticipated, and, while the mechanical elements combined were old, the combination shows patentable invention, especially in view of the utility of the tool and its superiority over those of the prior art. Claims 42, 45, 46, 47, and 48, the essential elements of which are a supply duct through the handle of the tool and a throttle valve in the handle for controlling the duct and operated by a spring pressed lever, are infringed by the machine of the Keller patent, No. 647,415, in which all of such elements are substantially reproduced.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 110 Fed. 217.

Edward Rector and John R. Bennett, for appellant.

E. Hayward Fairbanks, for appellee.

Before ACHESON and GRAY, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The bill was dismissed on the ground of noninfringement, and the case may therefore be appropriately approached from that side. The patent in suit was issued to Joseph Boyer, April 16, 1895, for a pneumatic tool, and its various features are expressed in a large number of claims, only two groups of which, however, were the subject of consideration in the court below. The appellant accepts the conclusion reached with regard to those, of which claim 5 is typical, and which relate to the automatic valve mechanism at the rear of the piston chamber. The only complaint, therefore, with which we have to deal is the treatment of those which cover the means for controlling the supply pressure, being claims 42 to 48, inclusive. Taking claim 47 as expressive of this group, it was held by the court below that a pressure supply duct was there called for which extended through the grasping portion of the handle, combined with a throttle valve to control the supply, of the exact construction and method of operation shown in the patent, and that, as neither of these appeared in the tool manufactured by the defendant company, it could not be held to infringe. The relative construction of this

part of the defendants' tool and that of the plaintiff as portrayed in the patent will appear by the following diagrams:

Plaintiff's Tool.

Defendant's Tool.

It will be there seen that the defendants carry the supply duct through the lower end of the handle direct to the head block of the piston chamber, while in the plaintiff's tool it extends through the entire length of the handle, the recurved neck as well as the grasping portion of it. If the plaintiff is confined to this construction, the conclusion reached by the court below was justified.

The combination of which this feature of the plaintiff's tool is a part is expressed in its broadest terms in claim 42, as follows: "(42) In a pneumatic tool the combination with the tool proper of a grasping handle secured thereto, and having the pressure supply duct extending through it, and a throttle valve in the grasping portion of said handle for controlling said duct, substantially as described." In the description given in the preceding specifications the handle proper is said to preferably consist of a portion, of the shape approximately that shown in the drawings, and adapted to be grasped in one hand of the operator in the manner of the ordinary handsaw, and a reduced reversely curved neck portion connecting the other with the head block of the piston chamber. But the inventor expressly declares with regard to his invention generally that by describing in detail a particular construction or arrangement he does not intend to limit himself beyond the terms of his several claims or the requirements of the prior art. With this reservation, the claim just quoted would, therefore, seem to be realized, so far as the supply duct is concerned, by any construction by which such duct is made to extend through any part of the grasping portion of the handle, and is not confined to one in which it traverses the whole handle, or the grasping portion of it longitudinally, as shown in the drawings. This cannot be said, it is true, of claims 43 and 44, each of which calls by specific mention for a handle composed of a grasping portion and a reduced neck portion, with the pressure supply duct extending through both. But it is true of the other claims of this group, including claim 47, taken by the court below as typical. In each of these, as in claim 42, the duct is simply spoken of as extending through the grasping handle, which, in claim 45, is still further narrowed, without qualification, to the handle. We are of opinion that, according to the proper construction to be given to these claims (excepting 43 and 44), the defendant's tool does not escape infringement by having the grasping portion of the handle connected with the head block by a lower neck or arm, and leading the supply duct through it. To accomplish this, the duct has first to pass through that portion of the handle which is to be grasped by the operator, and this it effectively does, even though it only traverses the end of it sectionally. It is by the introduction of the pressure supply duct through the medium of the handle in this way that the further device, which is common to both tools, is made possible, of a throttle valve set in the grasping portion, by which the pressure is put under easy and complete control of the directing hand of the operator, and it is of this situation that the defendants in the tool which they have designed have sought to obtain the benefit. To allow it to stand is to permit them to appropriate, without regard to the doctrine of equivalents, the whole principle of the invention, making the patent by which it is supposed to be protected practically of no value.

It is to be noted that the interpretation of the claims in question which we so adopt does away with any controversy over the effect of the proceedings in the Patent Office as disclosed by the file wrapper, of which much is made. We accept for the purposes of this case all that can in any event be legitimately claimed for the argument of counsel addressed to the examiner, which is there found; that is to say, that the pressure supply duct shall extend, not simply through the handle, but through the grasping portion of it, holding, as we do, that even with that construction put upon the patent the defendant's tool offends. At the same time it is to be observed that the meaning of counsel in this connection is not entirely clear, and whatever be the concession contained in it, not having been carried into the patent by any change in the claims as made, we by no means agree that it limits the terms of such claims as finally allowed. Acme Flexible Clasp Co. v. Carey Mfg. Co. (C. C.) 96 Fed. 344; Society Anonyme Usine v. Rehfuss (C. C.) 75 Fed. 657; Daylight Prism Company v. Marcus Prism Company (C. C.) 110 Fed. 980; Diamond Drill Company v. Kelly (C. C.) 120 Fed. 282. We further recognize that claim 45, which speaks merely of the pressure supply duct extending through the handle, saying nothing about the grasping portion of it, may possibly be entitled to a broader significance than we have thought necessary to give it or the other associated claims. Accepting the narrower construction, which is all that we need to do, the defendants are nevertheless found within it, and to that extent infringe.

So do they with regard to the throttle valve, which is the other element of the combination in question. This they have located the same as the plaintiff, in the grasping portion of the handle, and it operates equivalently to control the admission of fluid pressure into and through the duct. So far as claims 42 to 45 are concerned, no particular form of construction or mode of operation is specified in them, and none is therefore to be imposed; the combination is simply of a throttle valve in the handle in conjunction with a supply duct running through it, and that is all that is required to fulfill their terms. It is true that the inventor in his specifications describes a particular kind of valve, the same as shown in his drawings and in the diagram above; and, while a device of that general character may be called for, he expressly declares, as we have already seen, that he does not intend to limit himself with regard to the different parts of his invention—a reservation sufficient, as it would seem, to overcome the customary formula "substantially as described" at the end of the claim. Moreover, he has embodied in a special set of claims—49 to 51, inclusive, not involved in this suit—forms of valves corresponding with the specifications, to which, so far as concerns the mechanical combinations there described, the inventor is of course confined. But these are not to be written into other claims, which, in order to avoid the duplication that would otherwise result, if for no other reason, are to be taken and interpreted as they stand. National Cash Register v. American Cash Register, 53 Fed. 367, 3 C. C. A. 559. So far, therefore, as regards claims 42 to 45, the defendants infringe the combination, whatever the character of their throttle valve, provided only it is located in the grasping por-

tion of the handle, as it unquestionably is. In claims 46, 47, and 48, however, some descriptive particulars are given, and as to these the question is whether they are substantially reproduced. The character of the valve not being involved in this result, and it being unimportant, therefore, whether a flexible rubber clamping tube be employed or not, the only inquiry is with regard to the levers, and of the substantial equivalency of these in the plaintiff's and the defendants' tools there can be no reasonable doubt. In each, in the terms of the patent, the throttle valve controlling the supply duct is made up of a spring-pressed lever pivoted in a recess of the handle, and extending outside of it into position to be pressed upon by the hand of the operator, the normal action of the lever as affected by the spring being to keep the duct closed. The only possible distinction to be made is that in the one machine—the defendants'—the spring is attached to the plunger, which opens and closes the duct, while in the other—the plaintiff's—it is attached directly to the lever; but this is not material. In each construction the spring serves to hold both the valve and the lever in normal position, and both, against the resistance of the spring, are moved from normal position to open the valve. The same result is therefore accomplished by substantially the same means, acting in substantially the same way, which is sufficient. These particular claims have therefore been infringed equally with the others, and the defendants are answerable, provided the combination involved is a valid one.

With the issue confined to the supply duct and throttle valve, there are but few of the references cited as anticipations which become material, and of these we shall confine ourselves to a bare half dozen. The Boyer (1883), the Barth (1888), and the Schmidt (1890) may be dismissed with a word. The most they show is a flexible valve connected with or in proximity to the handle by which the tool is grasped, and which is thus brought within the control of the hand of the operator; but there is no combination of this with a supply duct extending through the handle, which is, of course, the material thing. The Drawbaugh (1892) is simply for a thumb actuated controlling cock

for pneumatic tools to be fastened into the end. While a handle at the rear of the cock, through which the supply duct shall pass, is suggested and shown, it is not an essential of the device, but a mere adjunct, to be applied or dispensed with at will. The cock is not in it, nor a part of it, so that in no sense does it correspond to or anticipate the throttle valve and supply duct of the plaintiff located not simply in the handle, but in the grasping portion of it, and thus brought into close conjunction, so as to be within the convenient and effective control of the operator. In the British patent to Ross (1891) we do have a throttle

 

valve in the appropriate position, but the supply pressure duct does not pass through the handle, but is introduced at another point in the tool, and the throttle controls the exhaust and not the supply inlet. No doubt this may be effective, and form an operative tool, the pressure current not being able to get in to do its work unless it can get out again, and so is able to be stopped and controlled at either place. But the mechanism by which it is cut off at the one differs from that by which it is cut off at the other, calling, as it does, for a different assembling and arrangement of the intermediate parts. We lay no stress, however, on the attempted distinction that, as argued, the throttle valve in the Ross is not so placed that the workman can use it to advantage, or that the grasping handle in one of the figures is shown at one side of, and not in line with, the body of the tool. Only in claim 45 do we have any suggestion that the handle should be in line, and the plaintiff would be hardly content to confine a recovery to that claim. The distinction we make is, as already intimated, that the supply duct is not carried through the handle, and the throttle valve is directed to opening and closing the outlet, and not the inlet, and that the two are not equivalent. This disposes of everything except the British patent to Low (1865), which in terms, at least, we must confess, approaches closely to the patent in suit. It is not to be distinguished by its size, or the uses to which it is to be put, its availability for riveting as well as for drilling rocks being specified, and one arrangement being said to be adapted for use as a portable hand-boring machine. Nor, as said above with regard to the Ross, can we regard the question of convenience of form, or where the handle or handles with which it is provided are set; nor whether they are in line with the tool, which may be an important feature in the plaintiff's device, although it is only set up in one claim; nor yet that there is a trigger for the throttle valve instead of a thumb pressed lever, the

form of the throttle valve not being involved. These incidents may bear more or less on the question of efficiency, but not on that of anticipation, with which we have alone to deal. These things aside, it is to be noted that the pressure supply in the Low is conducted the same as in the Boyer, through the grasping portion of the handle, and is controlled by a valve so placed as to be opened and shut by the finger of the workman. The only distinction is as to its position, and this is a narrow one. It is not located, in our judgment, in the grasping portion of the handle, as is required by the claims in suit, but beyond it, in a distinct recess or chamber of the tool body, specially fashioned to receive and hold it. Location, as already intimated, is important, affecting, as it does, the convenient arrangement of the other parts, of which the effectiveness of the Boyer tool, and those manufactured after it, gives proof. It evidently, in the Low, forces on the inventor a trigger worked valve operated by the finger of the workman, whose grasp on the tool is to that extent weakened and interfered with; while in the Boyer, on the contrary, the parts are so assembled and correlated as to work together to make the tool effective and dirigible. This distinction, in our judgment, is sufficiently material to sustain the novelty of the plaintiff's device, and relieve it from the charge of having been anticipated by this reference any more than by any of the others.

The utility of the invention is also assailed on the ground that no tools are now constructed in accordance with the patent, and have not been, as it is said, from almost the time that it was granted. But this does not fairly present the evidence. The plaintiff testifies that some 200 tools of the exact construction there shown were made and sold in 1894 and 1895, but were recalled on account of improvements which made the machine more durable. These were embodied in two subsequent patents, one the same year, in November, 1895, and the other in January, 1897, but they were for changes in other parts of the instrument, the combination which is here involved being strictly maintained and followed. It is true that the flexible rubber tube for closing the valve chamber was given up, and a valve of somewhat different character substituted. But the combination in issue does not depend, as we have seen, on the particular kind of valve employed, and the change was therefore no abandonment of its essential features, which

still obtain, and in accordance with which thousands of tools have been manufactured and disposed of. Their extended use in the shipyards, railroad shops, boilerworks, and other similar industrial establishments throughout the country testifies unanswerably to their utility and value.

The question of patentability is also raised, but we will not stop to discuss it. Convinced, as we are, that the plaintiff has supplied features that have brought success, where others who had preceded him failed, we are not inclined to scan narrowly the means by which it has been obtained. The mechanical elements combined are no doubt old, and so, to a certain extent, may be the result accomplished. But nowhere do we find the same combination employed to produce it, and he efficiency attained is so much in advance of that which had gone .efore as of itself to suggest, if it does not prove, the exercise of inventive skill. Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed 586; Taylor v. Sawyer Spindle Co., 75 Fed. 301, 22 C. C. A. 203; Stevenson v. McFassell, 90 Fed. 707, 33 C. C. A. 249; National Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 45 C. C. A. 544.

Holding, therefore, that the patent is valid, and that claims 42, 45, 46, 47, and 48 have been infringed, the decree of the court must be reversed, the bill reinstated, and the case referred to a master for an account.