EMPIRE CREAM SEPARATOR CO. et al. v. SEARS, ROEBUCK & CO.

(Circuit Court, S. D. New York. November 21, 1907.)

1. PATENTS—INFRINGEMENT—CREAM SEPARATORS.
    The Andersson patent, No. 555,893, for a centrifugal apparatus for cream separators, was not anticipated, and, in view of the conceded usefulness of the device and its commercial success, must be conceded invention; also *held* infringed.

2. SAME—SUIT FOR INFRINGEMENT—LACHES.
    Acquiescence in infringement may debar the owner of a patent from the right to a preliminary injunction, but will not prevent the granting on final hearing of such relief as may be equitable.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 467–469.

    Grounds for denial of preliminary injunctions in patent infringement suits, see note to Johnson v. Foos Mfg. Co., 72 C. C. A. 123.]

3. SAME—VALIDITY—DEFECTIVE APPLICATION.
    A patent will not be declared invalid by a court because the venue of the affidavit to the application was laid in one state and the jurat was made by a notary in another, where such application was accepted by the Patent Office and no fraud is shown.

In Equity. Suit for infringement of letters patent No. 555,893, for a centrifugal apparatus, granted to Gustaf M. Andersson March 3, 1896. On final hearing.

Kenyon & Kenyon, for complainant.

Andrew Foulds, for defendant.

HOUGH, District Judge. The first claim of complainant's patent is as follows:

"1. In a centrifugal separator, the combination with the separator-drum of an eccentrically-pierced rotatable plug fitted in the walls of a separating-chamber of said drum and so arranged that the rotation of said plug adjusts the distance from the axis of the drum to said eccentric opening, substantially as set forth."

The second (and only other) claim specifically describes the rotatable plug of claim 1 as a "rotatable screw plug" and makes reference to the drawings attached to the specifications of claim. The separators referred to in the quoted claim, and to which the invention relates, are cream separators operating on the well-known centrifugal principle. It is not denied that this method of separating cream from milk is old, and the patent is specifically limited to the combination of separator and plug, and the essence of the patented idea is that the rotation of the eccentrically pierced and perpendicularly placed plug changes the position of the aperture in the plug with reference to the rotating column of cream and milk contained in the separator. The farther the opening in the plug is removed by rotation from the periphery of the revolving chamber, the thicker the cream forced by centrifugal action through the opening in question.

It is, of course, admitted that plugs have been well known, and eccentric piercing thereof old; but the application of that construction to vary the distance of an orifice of discharge from the center of rotation of a milk or other separator, in order to tap (as may be desired) a thinner or thicker portion of the separator contents, is said to be a new invention, not expressed or described in any prior patent or publication, and, while narrow, meritorious. It appears to me that this is true. The thought is confessedly useful, and the commercial success which it has obtained, as shown by the evidence, is so great as to incline the court to look with favor upon it, on the principles laid down in Consolidated Rubber Tire Co. v. Firestone Tire & Rubber Co., 151 Fed. 237, 80 C. C. A. 589, and Wagner Typewriter Co. v. Wyckoff, 151 Fed. 585, 81 C. C. A. 129.

The defendant is a manufacturer of cream separators, and uses, or has used, three styles of plug, as shown below:

DEFENDANT'S PLUG OLD STYLE    DEFENDANT'S PLUG NEW STYLE    DEFENDANT'S PLUG LATEST MODEL

It is, I think, proven that the "old style" has been abandoned by defendant, and was identical with complainant's article. The "new style" and "latest model" are in daily use, and such use is justified as not constituting infringement. The plugs now used by defendant are all "pierced" in one sense of that word. They are not "eccentrically pierced," in one sense of that phrase; but the only useful portion of the piercing or cutting shown by the diagrams (at any moment of dis-

charge) is so much of the solid portions of the plug as may at any such moment be guiding the outflow of cream. When in operation, the guiding walls for defendant's cream outlet are formed by adjustment (through rotation of the plug) of the piercings or cuttings shown in the diagrams with a side opening in the separator wall. Such adjustment produces a serviceable opening in the plug. Such opening is a piercing, it is eccentric, it is adjusted by the revoluble plug, and by such revolution the distance of the serviceable opening from the center of rotation of the separator is changed at will. To be sure, the walls of the opening or piercing are not at all times the same walls, as in the complainant's device; but I cannot see that it makes any difference whether the revoluble plug carries its eccentric opening around with it or forms in every useful position an eccentric opening, which in each position is identical with complainant's device in operation and utility. The defendant's device does the same thing in the same mechanical way and on the same mechanical principle, and therefore, in my opinion, it infringes.

It is asserted that complainant's patent (No. 555,893, granted March 3, 1906) has been so long and persistently infringed as to prevent this complainant from seeking an injunction and accounting because of persistent laches. I think it would be useless to recite the testimony on this point. It is admitted that "knowledge of and long-continued acquiescence by a complainant in an infringement may in special cases be fatal on a motion for a preliminary injunction, but will not on a final hearing prevent the court from granting such relief as may be just and equitable." Taylor v. Sawyer Spindle Co., 75 Fed. 303, 22 C. C. A. 203. No such persistent and long-continued acquiescence in infringement is shown in this case as would render it just to deprive the complainants of the usual reward of litigation.

Defendant asserts that the British patent of Bergh (No. 1,315, January 27, 1887) reveals anticipation. It is true that the drawings annexed to the specifications of that patent seem to show an outlet consisting of an eccentrically placed tubular orifice in a plug. No reason appears for such eccentricity, the plug in which, it is shown, is not intended to be revoluble, and the adjustment of the outlet to the cream wall is in Bergh's patent attained in quite other ways. If the eccentricity of position shown in the Bergh diagram be not mere error in drawing, it was not there "designed, adapted, or used to perform the function which it performs," in the rotating plug of complainant, and therefore no anticipation is shown. Brill v. Third Ave. R. R. (C. C.) 103 Fed. 289.

It is finally asserted that the record of application for this patent does not contain the oath required by law. A certified copy of that record has been introduced in evidence, and it therefrom appears that the oath in question was taken before a notary of one state, who affixed his jurat to an affidavit the venue whereof was laid in another. This might have furnished ground for a rejection of the affidavit by the examiner or Commissioner of Patents; but there is no fraud shown, and the recital in the letters patent that the required oath was made is therefore conclusive upon this court, whatever may be thought of the Patent Office practice in accepting such an inartistic document. I think

the law on this head is succinctly and accurately stated in Walker on Patents (4th Ed.) § 122.

Decree for the complainant as prayed for in the bill.