## JOHNSTON v. WOODBURY.

(Circuit Court of Appeals, Ninth Circuit. May 16, 1901.)

1. PATENTS—CONSTRUCTION OF CLAIMS—LIMITATION BY DRAWINGS.
   A patentee of a machine is not limited to the precise position and dimensions of parts shown in his drawings, where it would render the machine inoperative, and the specification clearly shows that it was the intention to so proportion the parts as to produce a stated effect when the machine was operated.

2. SAME—INVENTION.
   A patentee cannot claim as new a device designed to accomplish a particular purpose, where, although such device was not anticipated by anything shown in a prior patent, the machine of such patent was capable of accomplishing the same result by substantially the same means, and it was so accomplished by users generally in its practical operation.

3. SAME—ORE CONCENTRATORS.
   The Johnston patent, No. 490,849, for an improvement in ore concentrators, is void for lack of patentable novelty.

Appeal from the Circuit Court of the United States for the Northern District of California.

John H. Miller, for appellant.
Wheaton & Kalloch, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The appeal in this case is taken from the final decree of the circuit court dismissing the appellant's bill in a suit brought for infringement of claims 1 and 2 of letters patent No. 490,849, granted to the appellant on January 31, 1893, for an "improvement in ore concentrators." The bill was dismissed after a hearing on the pleadings and proofs upon the ground that the patent sued upon was void for want of invention. Johnston v. Woodbury (C. C.) 96 Fed. 421. The appellant's invention relates to the class of machines known as "endless-belt concentrators," extensively used in mining regions. It contains an endless belt of canvas or of rubber, having integral raised edges, traveling longitudinally over two drums, and at the same time having a lateral shaking motion, which is imparted by appropriate mechanism. Finely-crushed sulphurets mixed with water, so as to be in the condition of a thin pulp, are fed to the surface of the belt. The purpose of the lateral motion, combined with the longitudinal movement, is to separate the sand from the sulphurets, and to cause the sand to travel downward and pass over the tail end of the belt,

while the sulphurets are carried upward and over the head of the belt, into a tank provided for their reception. It appears from the evidence that, to accomplish this result, it is necessary that the pulp be evenly distributed over the surface of the belt, and that if it bank up in places the work will be defective. It appears, moreover, that three general styles of machine have been devised to accomplish the separation of the sulphurets from accompanying sand,—one known as the "end shake," one as the "side shake," and the third as the "rocker." In the end-shake machine the belt, in addition to its longitudinal travel, has a quick jigging motion in the line of its travel. The side shake has been already described. The rocker, instead of the shaking or jigging motion of the other two, has a side-rocking motion, similar to the motion of a cradle. The appellant is the original inventor of the side-shake machine, having received in 1867 his first patent therefor,—letters patent numbered 66,499. This patent he sold to the Frue Concentrator Company, and the machines made under the patent by that company are known as "Frue Concentrators." The Frue concentrator is constructed upon the theory that, in order to secure the proper separation of sulphurets from the sand by use of a traveling belt, it is absolutely necessary that the belt rollers be maintained at all times in a horizontal position, and that the belt surface shall not tip to either side in its lateral motion. In the machine of 1867 the appellant supported his belt from vertical hangers parallel with each other. He subsequently discovered that in such a machine there was a tendency of the pulp to bank up and form ridges along the edges of the belt. For the purpose of correcting that defect he devised the machine for which he obtained the patent which is in controversy in the present suit. In his specification he says:

"My improvements consist, generally speaking, in a novel manner of connecting the belt frame carrying the moving belt to the stationary main frame, so as to produce an oscillatory motion of the former; further, in means for changing the degree of oscillation given to such frame. * * * I have termed the lateral motion of the belt frame and belt an 'oscillating motion,' to distinguish it from the ordinary horizontal side shake, as well as from the movement produced by mounting the belt frame upon base rockers. The horizontal side shake is ordinarily produced by supporting or suspending the belt frame by vertical swinging rods, having a parallel motion, by means of which the surface of the belt maintains a constant horizontal plane as it shakes. I support or suspend my belt frame by links, I, which may be either rigid bars or wooden or metal springs. These links are pivoted to the main frame and to the belt frame, and are placed at an angle to one another (Fig. 3), so as to swing with a nonparallel motion. Either or both the pivot bearings for these links may be made adjustable, as shown at e, in order that the angle may be changed, and a greater or less variation from the horizontal plane be given the belt. In Fig. 3 I have shown these links as tending to converge downwardly. The effect of their side swing is to give the belt a swinging motion on an upward curve. But in Fig. 4 I have shown the links as tending to diverge downwardly, in which case the swing of the belt is on a downward curve. In other words, any one point on the surface of the belt moves in an arc, the direction of whose curvature relatively to the horizontal depends upon the convergence or divergence of the links; the amount of movement depending upon the angle at which the links are placed."

It thus appears that the invention of the appellant consists in supporting the belt rollers upon rods which are not perpendicular,

as in the Frue machine, but are placed at an angle, thereby producing an oscillatory motion,—a motion whereby in each turn of the belt from right to left and from left to right one side of the belt is in turn lifted higher than the other, causing the belt to tip alternately to the right and to the left. By this invention a motion was introduced which was not sought to be obtained by either the side-shake or the end-shake machines that had preceded it, unless it be involved in the Carter and Adams patent, which will be considered hereafter. The appellee, in manufacturing the machines which are said to infringe upon the appellant's patent, has not adopted the angle which is shown in the appellant's drawings. He supports his belt frame upon ogee springs bolted to the main frame below and to the belt frame above, and turning not upon pivoted, rigid rods, but controlled in the lateral movement by the elasticity of the springs, creating thereby an oscillatory movement of an uncertain curve, depending largely upon the construction of the springs. It is contended by the appellee that the patent is void for want of utility, for the reason that the angle shown in the drawings is so great as to render the successful operation of the machine impossible. We do not think, however, that the appellant should be limited in his invention to the use of the angle which appears in the drawings. The specification contains no designation of a specific angle, and it is clear that the patentee contemplated that the angle should be such as would successfully overcome the defects which his invention was designed to remedy. The idea of his invention was to place the rods at an angle,—at any angle that would give the necessary oscillatory movement to prevent the banking of the pulp upon the traveling belt, and at the same time not throw it over the sides. The specification clearly indicates this.

The defense principally relied upon, and which was sustained by the circuit court, is that the appellant's patent is void for want of invention. In considering the prior art it is sufficient to refer to the invention of the Carter and Adams ore concentrator, patented September, 1883,—No. 285,110. This patent was transferred to the Frue Company, and numerous machines have been manufactured under the patent and put in use by that company. The machine belongs to the class of side-shake machines. That portion of the specification which refers to the adjustment of the supports of the belt frame reads as follows:

"It has been found by experience that, despite the greatest care and uniformity in making the class of machines, results will differ in machines of the same construction. In some the ore will bank or collect at one side of the belt against the flange, and in others it will bank in another place, without any apparent cause, as the belts all run smoothly and easily, and are, to all appearances, nicely adjusted. We have discovered that by changing to a limited degree the inclination of the supporting strips, E, the belt is affected in such manner as to remedy this fault, and to distribute the ore evenly over its surface. We accomplish this adjustment by means of a rocking nut, which enables the operator to change the position of the faces of the supports of straps, E. The said supports are constructed as follows: Bolts, b, passing vertically through the timbers, A, hold beneath said timbers blocks, e, having their upper surfaces where they bear against the timbers rounded, as shown at $e^2$, and having longitudinal slots, $e^1$, to receive the bolts, and sockets, $e^3$, to receive the lower ends of the straps, E. The

lower surface of each block has a longitudinal depression, e4, in which rests a washer, i, having a curvilinear face, against which rests the head of the bolt when in position. A blow or a series of blows upon the block, e, will cause it to change position by rocking on the curved face, e2, against the timber, A, and the curved face of washer, i, against the head of the bolt, so as to vary the position of strap, E, as to a vertical line."

It will be seen that this specification provides for an adjustment of the belt-carrying supports by changing their inclination for the purpose of distributing the ore evenly upon the surface of the belt. If a machine were constructed, however, under the Carter and Adams patent, strictly in accordance with the drawings, it is apparent upon an inspection of the latter that no adjustment could be made of the supporting strips either longitudinally in the direction of the travel of the belt or crosswise. But if we assume that the drawing is incorrect, and if we rely solely upon the specification, it would seem clear that the only adjustment contemplated by the inventors was a change in the position of the blocks beneath the timbers, and which sustain the supporting strips by causing the blocks to turn upon their curved surface against the timbers, thereby moving the bases of the supporting strips slightly, either forward or back, and longitudinally with the belt travel. The blocks which support the strips have, however, longitudinal slots to receive the bolts; and by use of the slots, if the blocks are not constructed to lock upon the timber, it may be perceived that the blocks are movable crosswise, and that thereby the base of the supporting strips may be moved in or out, as desired, to change their inclination. We find nothing in the patent to show that this was contemplated by the inventors, nor do we find it distinctly stated in the circular which the Frue Company was accustomed to send out describing its machine, and the manner of its management and adjustment. In the circular it is said:

"To adjust the load, and keep the sand evenly distributed on the belt, the lower bearings, b, of all the uprights, N, on one side of the machine, are moved forward or backward by slight blows of the hammer. The change of position from the vertical of N, etc., thus occasioned, affects the pulp on the belt; and by changing the position of b, etc., on one side or the other, the right balance or equilibrium will be obtained, and the sand and water (or pulp) will be uniformly distributed across the belt; e. g. if the heavy sand corner is on the shaft side, move the bottom bearings, b, etc., on the opposite side out."

But, whatever may have been the thought of the inventors as described in the patent, the testimony proves clearly that for many years before the date of the appellant's invention the belt frame of the Frue machine, which was manufactured and sold under the Carter and Adams patent, was, in practice, adjusted by moving the base of the supporting strips in or out as occasion might require, and not longitudinally in the direction of the traveling belt. The extent of the inclination, it is true, was not great. It was any distance from a quarter of an inch to an inch and a half. The result was that, in a supporting strip of 17 inches in length, the departure from the perpendicular was not always noticeable. The inclination was in each case such as was necessary to secure the even distribution of the load upon the belt. In securing such distribution,

those who used machines made under the Carter and Adams patent did what was done by the appellant when he experimented to ascertain the angle which would best secure the result which he sought to accomplish. He began with supports that were five inches out of the perpendicular. Finding that at this inclination the sand banked in the middle of the belt, he reduced the inclination until he fixed upon a distance of from one inch and three-quarters to two inches and an eighth, as most likely to produce the desired result. Can it be said that, in view of the facts thus shown in common practice by those who used ore concentrators for several years prior to the appellant's patent, the appellant's device contains invention? We think the question must be answered in the negative. The appellant places in his specification, in succinct form, that which had been in common use for several years. Conceding that the idea was not covered by any prior patent, it was nevertheless not new. Those who operated the Frue machines under the Carter and Adams patent adjusted their supporters in the same manner that the appellant adjusts his. While they may not have placed the supports of their belt frame at any precise angle, and while they may not have contemplated or specifically desired to obtain an oscillatory movement of the belt by tipping it to the right or to the left in connection with the side shake, they still obtained such tipping, and the results thereof, and they secured thereby the even distribution of the material upon the belt. So far as the angle of the inclination of the supporting strips is concerned, it is immaterial whether in this common prior use the angle was the same as that which the appellant finally adopted or not. What the appellant claims in his patent is the right to use supports that are not parallel, but are placed at an angle so that in making the lateral movement the surface of the belt shall move in the arc of a circle. If his patent were sustained, it would protect him in the exclusive right to place his supports at an angle. He could not be restricted to the use of any particular angle, for he has named none in his specifications. In such a case no one could defend against the charge of infringement by showing that he used an angle different from that which the appellant finally adopted in practical use. Neither can the appellant now claim that the idea of his device is not involved in the prior use of the Carter and Adams machines, for the reason that the angle adopted in such prior use was less than his. The idea of moving the belt in the arc of a circle in connection with the side shake was not new. It had been done under prior patents by means of rockers. The idea of placing the lateral supports of the belt frame at an angle was not new. It had been done, as we have seen, in operating the Carter and Adams machines. Those who had operated those machines had adopted in each case such an angle as would produce practical results. That is exactly what has been done by the appellant. He can claim nothing from the fact that his support is shorter, and his inclination greater, than the corresponding construction in the Carter and Adams machines. Those who have thus used the Carter and Adams machines undoubtedly have acquired, and still retain, the right to

continue to adust their belt supports at any angle which they may see fit to adopt. The appellant, by securing his patent under the existing circumstances, cannot deprive'them of that right, nor can he prevent others from adopting that which was thus in common use.

The appellant invokes the doctrine that patents for inventions should be liberally construed, and that the court should sustain, if possible, the claim of an inventor, and cites the rule that, where a patented device has gone into extensive use and produced a new and beneficial result, that fact is strong evidence of invention, however small the mechanical change from older devices. To this it may be said that if the evidence in the present case were sufficient to show that the appellant, in placing the upright supports of his belt frame, had established them at a particular angle, and that thereby a better distribution of the pulp had been secured than was obtained before, we should have no hesitation, in view of the prior art, in sustaining his patent. But such is not the evidence. The facts shown in the testimony do not convince us that the appellant's machine works better than machines that have been in common use since 1883. The whole of the evidence tends to show that all ore concentrators operate uncertainly and capriciously, that they require constant attention and care, that banking of the sand upon the belt surface will result from obscure causes, and that, to remedy such defect, there must be a frequent readjustment of the belt supports. The evidence tends also to show that, with careful and intelligent supervision, all of the ore concentrators in common use work with substantially equally good results. We think the decree of the circuit court should be affirmed.