## PERLMAN v. STANDARD WELDING CO.

(District Court, S. D. New York. August 18, 1915.)

**1. PATENTS** ☞328—VALIDITY AND INFRINGEMENT—DEMOUNTABLE RIMS FOR WHEELS.

The Perlman patent, No. 1,052,270, for a demountable rim for carrying the tire of automobile wheels, which may be readily and speedily removed and replaced, with means for locking it on a fixed rim and the felly of the wheel, was not anticipated and discloses invention. Claims 8, 11, 12, and 13 construed, and *held* infringed.

**2. PATENTS** ☞73—ANTICIPATION—PRIOR PATENTS.

A patent is not anticipated by a prior patent, where the patentee carries the date of his invention back to a time prior to the issuance and publication of the alleged anticipating patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 64; Dec. Dig. ☞73.]

In Equity. Suit by Louis H. Perlman against the Standard Welding Company. On final hearing. Decree for complainant.

Decree affirmed 231 Fed. 734, —— C. C. A. ——.

Daniel J. Mooney, of New York City (Melville Church and Edgar M. Kitchin, both of Washington, D. C., of counsel), for plaintiff.

Fish, Richardson, Herrick & Neave, of New York City (Fay & Oberlin, of Cleveland, Ohio, of counsel), for defendant.

HUNT, Circuit Judge. Suit for infringement of letters patent No. 1,052,270, issued to the plaintiff on an application filed June 29, 1906, which was the continuation of, and the substitute for, an application filed May 21, 1906. The wheel made by defendant is alleged to contain and embody plaintiff's invention as in claims 8, 11, 12, and 13. The defendant denies (a) infringement; (b) that plaintiff was the original and first inventor of the alleged improvement in wheels contained in said patent; and (c) that it was not known and used by others before its alleged invention by plaintiff. It avers that the subject-matter of the patent had been, prior to its alleged invention or discovery by Perlman, or more than two years prior to his application, patented or described in certain named letters and in printed publications, and that, in view of the state of the art, the subject-matter of the patent did not involve any invention whatsoever.

[1] Plaintiff's patent relates to improvements in wheels, and more particularly to the demountable rim type. It is stated that the object is to provide a demountable rim, sustaining a tire capable of ready application to, and removal from, a fixed rim and felly of a wheel; the demountable rim being so constructed as to facilitate the application and removal of a shoe. Means are provided for firmly and rigidly retaining the demountable rim on the fixed felly and rim while in use. The fixed rim has an annular flange on one edge. There are threaded apertures in the body of the fixed rim, intermediate at its edges, through which are threaded bolts formed with a frusto-conical entering end. The demountable rim, which is slid axially onto the

fixed rim from the flangeless end of the latter, has conical or frusto-conical apertures into which these bolts enter and lock the demountable rim firmly in place. Locking nuts prevent loosening of the bolts. The bolts serve as connectors between the wheel body and the demountable rim, and are adapted to exert outward radial pressure on the latter. The demountable, or tire-carrying, rim is made in two sections, each of which is cut away for a portion of its thickness, forming an annular shoulder, and one of which overlaps the other for the width of the cut-away portion, with the free edge of each lapping portion engaging the shoulder of the other. These sections are secured together by screws. Each section has at its outer edge a clencher flange, curved to produce an annular groove to receive the annular beads of a tire shoe. The demountable rim has an aperture for the valve stem, and the fixed rim and felly have a notch into which the stem enters. Short-stem lugs, designed for use in connection with a detachable operating tool, are employed to engage the tire shoe and press it into position, with its beads in the grooves of the flanged edges of the rim. The tire-carrying rim is of such diameter as to be easily slipped over the fixed rim; the valve stem as it enters the notch in the fixed rim and felly serving as a guide for the proper positioning of the demountable rim on the fixed rim. When the radial bolts are screwed into the conical openings and the nuts are tightened, the demountable rim is fast on the wheel. The bolts cause the demountable rim to be moved radially away from the fixed rim and also laterally against the annular flange of the fixed rim. A witness for the plaintiff testified that the bolts also serve to prevent the demountable rim from creeping or rotating upon the body of the wheel.

The claims sued on, 8, 11, 12, and 13, read as follows:

"8. The combination of a demountable rim having radially disposed clencher flanges, a tire shoe having beads engaging said flanges, a wedge-shaped clamping plate bearing against said beads and adapted when moved to force said beads against said flanges, and means accessible from the inside of the rim for drawing the clamping plate radially toward the rim."

"11. The combination, with a wheel body, of a demountable rim therefor, a locking element, having a tapering portion, that is adapted to be moved radially and to thereby exert pressure against the rim outwardly radially of the wheel body, and to act as a wedge laterally, said locking element having an engagement with the wheel body whereby it may be moved radially of the wheel body.

"12. The combination with a wheel and its felly of a demountable rim therefor, a locking element having a tapering end that is adapted to be moved radially and to thereby act as a wedge laterally and exert pressure against said rim radially of the wheel, said locking element having a threaded engagement with the wheel structure whereby it may be moved radially of the wheel.

"13. The combination, with a wheel body, of a demountable rim therefor, and a locking element, having a tapering portion, that is adapted to be moved to exert pressure against the rim outwardly radially of the wheel body, and to act as a wedge laterally, said locking element having an engagement with the wheel body."

Plaintiff contends that each of his locking elements consists of a wedge acting against an inclined face of the demountable rim and driven by a power element which anchors the wedge to the wheel; that the fact that the inclined face is that of a conical opening is merely an in-

cident, not altering the dual action of the locking element; that the wedge is the tapered end of a bolt, and the bolt itself the power means; that the locking means consist of a series of wedges, and that the bolts which carry the wedges are the actuators; that each bolt in defendant's device is threaded through the wood felly and fixed rim, and has a movable nut which actuates the wedge, and that there is but a reversal of parts, with the same functions attained in the same way as with the movable bolt in a fixed nut actuating a wedge; that the immediate actuator of the wedge in defendant's device is a nut threaded on the bolt, and that there is no substantial distinction between moving a wedge by threading a bolt through a stationary nut, as in plaintiff's device, and moving a wedge by threading a nut along a stationary bolt, as in defendant's device.

The defendant contends that in 1906 and 1907, along with a number of other manufacturers of automobile wheels and rims in this country, it began to make what is known as the "Old Style Continental Demountable Rim," the characteristic features of which are substantially those of the exhibit introduced by the plaintiff as the defendant's wheel, and that the construction of this wheel was an adaptation of a wheel that had been previously introduced commercially to the trade in Europe, and particularly in France, where it was known as the Vinet demountable wheel, after the name of the presumed inventor, one Gaston Vinet, of Paris, France. Defendant's wheel has the ordinary spokes and wood felly and a fixed metal felly band, with an upturned flange on the inner side. There is an opening in the felly and band to receive the valve stem of a pneumatic tire. The demountable rim is of the clincher type, and is provided with a block which fits between two plates on the fixed rim, so that it will not creep. It is provided with a series of holes for nuts for short-stem lugs, and also with a hole for the valve stem. The locking devices, of which there are eight, consist of a bolt and a metal wedge. The bolts pass axially through the wood felly, and each has a head on its inner end, so shaped as to prevent its rotation. There is a nut on the outside end of each bolt. The wedges go between the demountable rim and the fixed rim, and exert an inclined pressure upon the demountable rim radially away from the wheel body, spacing it from the fixed rim, and also press it laterally against the flange at the other end of the fixed rim. The wedges used by the defendant are propelled by means of threaded bolts, the immediate actuators being 8 nuts threaded on the bolts.

The same result is accomplished in both devices; a demountable rim is supported on a small amount of surface, and is capable of ready application and removal, and yet is firmly locked on the fixed rim while in use. While in the case of one there is a bolt, with a frusto-conical end which enters a conical cavity in the demountable rim, and in the other (a) a bolt which enters the felly axially, and (b) a wedge plate, in each there is produced this effect: Radial pressure outward from the wheel body, and lateral pressure against the curved flange of the fixed rim, is exerted on the demountable rim. The demountable rim of the defendant, like that of the plaintiff, is of rolled sheet metal, comparatively thin, capable of an amount of distortion, yet sufficiently

rigid to carry the full load between the points of support. Again, the demountable rim of the defendant is cylindrical, like plaintiff's, and is made so as to have certain spaced inclined surfaces engaged and locked by small wedges like plaintiff's, and provided with locking wedges for engaging the rim at spaced points; the wedges being constructed to present the least amount of surface in contact with the rim.

I can perceive no distinction in function between the two wheels, and as a fact the question that presents itself is whether or not such a similarity exists between the patented device and the defendant's wheel as will sustain the claim of infringement.

A feature of plaintiff's invention is the means of anchoring the pneumatic casing to the demountable rim, such means being a short-stem lug. Before Perlman invented, lugs known as long-stem ones were in common use for the purpose of keeping the beads from working out of engagement with the flanges; the same being long enough for all purposes of working the tire. There had been difficulty in using short-stem lugs because of the impossibility of applying the tire beads in place while the lug was in place. It was customary to push the lug radially outward on the body of the tire while the outer bead was being positioned. In seeking a practical short-stem lug, the difficulty to be overcome was the positioning of the lug. Perlman, however, conceived the idea of providing a detachable handle whereby the short-stem lug was made possible, since the capacity for positioning the short-stem lug enabled its use and so enabled its existence. The short-stem lug shown by plaintiff and by the defendant, when compared, disclose identity in structure and function.

Defendant has cited many references. Relating to the prior art, the more important point for consideration is whether, considering the demountable rim in itself, the wheel and locking means co-operate to tension the demountable rim while in use and to allow the rim to fall off after the locking means are released. References to inventions describing removable tire-carrying rims which had to be forced off while they were still held rigid are not very helpful, in view of the fact that the rims of plaintiff and defendant are rigidly mounted in use, but are never removed while they are rigidly mounted. It is unnecessary to prolong the discussion by entering upon detailed examination of the references cited by defendant. It is sufficient to say that Perlman's invention was disclosed to the public, and especially to officials of the defendant, and in its principles became useful and popular. The device of Perlman was a practical solution of the problem of replacing a deflated automobile tire in a quick and easy way.

Patents issued subsequent to the invention, which was completed by Perlman in the summer of 1903, and which under the evidence must be found was first publicly used by Perlman on a Royal car in August, 1904, are not decisive. Patents, however, of a date prior to August, 1904, should be considered. Patent to Edenborough, No. 695,805, disclosed a rim bolted by radial bolts incapable of use where a rubber tire was applied to the metal rim, unless the idea of permanency of mounting was of prime consideration. The tightening wedge blocks

do not act as locking means, and the metallic rim is not demountable. Patents No. 4,447, 1846, and No. 405,710, 1889, showing railway car wheel structures with rims intended for being mounted permanently, ought not to be regarded as fairly in the prior art under examination. It strikes me that such structures apply to a foreign art. But, if I am wrong in so regarding them, still they could not be claimed to disclose a solution of a problem in the art of automobile wheels. In the car wheel art the object was to get the rim on just as tight as it could be put on and to mount it nearly with permanency, and in doing so the greatest amount of contact surface was provided between the rim and the wheel body of the car wheel. The British patent to Burnet, 1902, and United States patents to Gerstner, No. 631,294, 1899, and to Grier, No. 746,693, 1903, and Munger, No. 638,590, 1899, relate to structures involving demountable rims held tight upon their wheel bodies by conical fit or bolts pulling the rim down against the wheel bodies. Such a structure appears to have been found of little use, owing to the fact that the rim becomes so attached to the wheel body that it requires much more labor to remove it than to take the tire from the rim.

The Q. D. rims, as they are referred to, are those where a ring or section of the channel or bed for the tire may be removed for releasing the tire, so that it can easily be taken off and a new tire replaced. It is necessary, however, under the patents for such rims, that the replaced tire must be applied and the work performed on the road, including pumping up, which makes replacement much more laborious than the mounting of a demountable rim carrying an already inflated tire. Patents on the Q. D. rims include those issued to Tillinghast, No. 689,247, December, 1901, Latimer, No. 624,590, May, 1899, and Smith, No. 633,917, 1899. I am far from satisfied that under any figure in the Tillinghast patent there can be added size and capacity to be load-carrying and stress-distributing in a way to make a demountable rim. Tillinghast shows a solid tire and core which does not stretch. He did not describe his figure as a demountable rim and, as I understand the drawing, the tire channel shown in the drawing of the Tillinghast patent is for a complete contact throughout its circumference. And what is true of Tillinghast is in a sense to be said of the others relied upon, for in all there is some form of side plate or section of the bed for the tire which has to be removed laterally, so that the tire can come off to be replaced by a new one, without provision being made against need of inflating the new tire after mounting. Q. D. rim devices relied upon are based upon having a close, continuous bearing contact with all possible surface of the tire against the bed, whereas the principle applied in the demountable rim art is just the reverse. Obviously rims for solid tires, when considered with relation to the permanence of solid tires, would be of little practical value in the use of pneumatic tires, where there is the lack of stability which characterizes the solid tires.

The French patent to Vinet, No. 347,651, November 4, 1904, was considered by the Patent Office examiner, who referred to it in his letter of September 14, 1908, and cited it on December 10, 1908. Complying with rule 75 of the Patent Office rules of practice, Perlman

made a showing sufficient to overcome the Vinet reference, and thereafter the examiner in the Patent Office abandoned Vinet. Perlman showed prior invention. Thereafter the Commissioner of Patents granted Perlman's claim 13, which read on the Vinet showing. As to claims 11 and 12, Vinet is not pertinent. As I understand it he shows a complete ring, not cross-cut or split, as appears in defendant's evidence, and fails to show a ring capable of expanding and moving radially. It is in evidence that claims 11 and 12 of the patent in suit being confined to a locking element capable of radial movement Vinet does not present a reference pertinent to them.

[2] But upon a broader ground the plaintiff should not be defeated by reference to the Vinet patent, because the evidence convinces the court that plaintiff has proved his invention as antedating the foreign publication of date March 18, 1905. Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Westinghouse Elec. Mfg. Co. v. Roberts (C. C.) 125 Fed. 9; Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 11 Sup. Ct. 846, 35 L. Ed. 521; Hunnicutt Co. v. Gaston Co., 218 Fed. 176, 134 C. C. A. 56; Brooks v. Sacks, 81 Fed. 403, 26 C. C. A. 456; Emerson & Norris v. Simpson Bros. Corp., 202 Fed. 747, 121 C. C. A. 113; Westinghouse Co. v. Stanley Co., 133 Fed. 167, 68 C. C. A. 523; Westinghouse Elec. & Mfg. Co. v. Saranac Lake Elec. Light Co. (C. C.) 108 Fed. 221. The evidence satisfies me that in 1903 plaintiff completed, and in 1904 in a successful way operated, his invention. It was not until 1904 that he put it into use in his automobile, but entirely credible witnesses have established the fact beyond dispute that in 1903 plaintiff had reduced his invention to actual, tangible, physical shape. The testimony offered upon the issue of the early production of the invention of the patent in suit was very carefully considered and weighed as the witnesses testified upon the stand. The need for very clear proof was well in mind ; yet, after sifting and analyzing, the evidence impels the conclusion that plaintiff has established beyond a reasonable doubt the use of his invention on the Royal car in 1904. Documents sustain the oral proof and make the whole evidence convincing. For years, beginning back in 1900, the activities of plaintiff were applied to work upon the repairing of tires, always with a view of inventing means to avoid the delays incident to such repairs on the road. Men of unquestioned responsibility and character have told of experiences in 1903 where plaintiff dilated upon possible means of overcoming tire troubles. Not that such evidence establishes early invention, but it does prove the existence of facts showing conditions out of which invention might well be forthcoming. There can be no successful dispute of the documents which show that in 1903 plaintiff was working on material exhibits offered in evidence, and plainly evidence of things which led up to the production of the wheel offered in evidence must have preceded the work on the wheel itself, and the mental conception was there.

After many unsuccessful attempts to carry out his idea, Perlman procured two automobile wheels, took them to a shop, and had a certain wheel produced, which was afterwards taken to his house in New York. Documents show that one of such wheels was finished some

time before July 1, 1903, and that he paid a bill to the manufacturing company before July 16, 1903. The factory people recall having done the work for Perlman, and distinguish the work done prior to July 1, 1903, from that put upon the second wheel, with lugs or stops at the back. The record discloses that tests were made after the delivery of the wheel to Perlman at his residence in the spring of 1903. These tests were made in the house, and it was not until August, 1904, that the plaintiff bought a Royal car and applied to it his invention. Another wheel was made before May 1, 1904. In October, 1904, he put his wheels on a Welsh car and used it. The invention was satisfactory to the inventor, and the methods of mounting the demountable rim and the short-stem lug for securing the tire on the rim were perfect and complete. A number of witnesses say they went riding with Perlman in the summer and fall of 1904; one witness particularly recalling that he went with Perlman in the Welsh car to attend the first Vanderbilt Cup race, the date of which was the fall of 1904. Some of the witnesses for the plaintiff were men without mechanical training, but they have described in a general way the construction and operation of plaintiff's devices, and have stated enough to show that the structure which Perlman employed was a conical recess and was operated as Perlman says it was operated.

Perlman delayed filing a patent application, and it may be that in this he imperiled his rights. But his explanation impressed me as entirely credible. He said that, while the tests of his invention had proved satisfactory, yet, as the work of changing tires in the garage after the demountable rim had been brought in with a ruptured tire was considerable, he undertook to solve the problem presented by such conditions before filing his patent application for his completed invention. In 1905 he made a split rim, or demountable Q. D. rim. He consulted counsel and then took steps to obtain a patent. He filed two applications within the two years allowed by the statute in which to file an application after public use of an invention. In doing this I should say that he complied with the law and was rightfully allowed the claims in suit over the patent to Vinet, as well as over other references adverted to by the defendant in this suit.

Claim 12 of the patent in suit was introduced subsequent to a decision by the Court of Appeals for the District of Columbia, but is not inconsistent with an order of the Commissioner of Patents made prior to the sending of the record in litigation which found its way to the Court of Appeals of the District of Columbia. Claims 11 and 13 were added without reference to previous proceedings, and subsequent to the decision of the Court of Appeals, affirming a decision by the Commissioner of Patents refusing certain claims made by the applicant. No claim on which the patent in suit issued was ever presented or acted upon which was limited to a locking element acting in two directions, both in a radial and lateral way, and it would seem to follow no claim was ever canceled on the record, which is to be considered as a concession that the patentee is not entitled to the protection afforded by claims 11, 12, and 13. I do not believe that the Court of Appeals of the District of Columbia by any mandate precluded, or in-

tended to preclude, the Commissioner from granting claims 11 and 13 of the patent in suit, for the opinion of the court refers the matter to the consideration of the Commissioner. In re Perlman, 39 App. D. C. 447.

Passing to the file wrapper, we find that Perlman appears to have believed that he invented more than he really did. This is shown by his application, serial No. 318,075, presented in the Patent* Office, wherein he claimed the broad idea of a tire-carrying demountable rim, without limitation as to its method of mounting or means of retention. While his first application was pending, when he filed his application No. 324,045, he did not present claims in the second case covering the same ground as those which had been included in the first case. In his first application, No. 318,075, claim 1, he used this language:

"In a device of the class described, the combination, with a tire, of means connected therewith for enabling the application thereof directly to a wheel in either an inflated or a deflated condition."

It may be that the inventor did not wholly understand the claim of wedges and means for actuating those wedges for effecting locking action at that time. But in claim 8 of his original application, No. 324,045, he clearly and expressly did use language referring to a wedge action and to wedges for effecting locking action. Defendant asks a construction which would limit the original idea to wedging a rim circumferentially, but I think the statement in the application that the rim was to be wedged for adjusting the rim to its proper position on the felly refutes a limitation as contended for. More reasonable does it appear to regard the wedges actuated by the radial bolts as meant for and used as means for making a tight fit of the demountable rim upon the annular stop flange. An error by the draftsman failed to show the wedges in the application No. 318,075, and the inventor merged that case in the application on which the patent in suit was issued. Application No. 324,045 was followed by persistent efforts on the part of plaintiff to obtain recognition. Merger was had. The claims were modified in response to the status of the art. Many claims were presented, and many canceled, and yet I find no claim of the same scope as the claims of the patent, and none which, being conceded to be nonpatentable, can be construed as an estoppel against Perlman's right of protection against infringement by a rim wheel, demountable, embodying locking elements placed to press the demountable rim radially outward and thrust it at right angles to the radial action in the final or operative position and to lock there tensioned during use, but capable of being readily released from tension, allowing the rim to assume a loose position before it starts to move off of the wheel. Hess Bright Mfg. Co. and D. W. & M. Co. v. Fichtel & Sachs, 219 Fed. 723, 135 C. C. A. 421.

I find claims 11, 12, and 13, of patent No. 1,052,270, which are directed to the demountable rim locking means and the combination thereof with a wheel body and its demountable rim, are infringed.

Claim 8, relating to the wedge-shaped clamping plate for clamping the clincher bead of a tire, and the combination therein set forth, is for a device used with defendant's structure when the apertures and recesses of defendant's demountable rim are made use of at all. The

evidence shows that the depressed portions in the median line of defendant's demountable rim, each of which is apertured centrally, are of no utility except when employed for receiving the nut of a short-stem lug with the stem of the lug extending through the aperture, and the apertures are used in no way other than to receive a short-stem lug. The combination set forth in claim 8 is present in the parts furnished by the defendant, as if the complete combination were sold by it.

Finally, Perlman's patent shows invention, completed by him in 1903. Two distinct features mark the invention: (1) The demountable rim combination, with its locking means; and (2) the short-stem lug combination, for clamping the tire to the demountable rim. The invention claimed was based upon a provision for a demountable rim, which is loose on the wheel when applied, but is locked by locking means, which may be unlocked and thereby may restore the loose condition before commencing removal. This same combination has been adopted by defendant, and the same combination as disclosed and claimed in the patent in suit has been taken. Plaintiff disclosed to the defendant the patented invention before the defendant began to manufacture demountable rims.

The evidence requires the finding of infringement and the granting of an injunction and accounting in usual form.