## MUNGER v. PERLMAN RIM CORP.

(District Court, S. D. New York. June 20, 1917.)

### No. 99.

1. PATENTS ⚙⇒328—VALIDITY AND INFRINGEMENT—PNEUMATIC WHEELS.

The Munger patent, No. 638,588, for a combined elastic and pneumatic tire, claim 4, which relates to means of securing the base or rim detachably to the wheel through the tapering of their adjacent surfaces, was not anticipated, and discloses an operative and commercially useful device, and is not limited to any precise taper nor to a taper which extends entirely across the width of the felly or of the rim, but covers any angle or extent of taper which accomplishes the desired end, which is the ready removability of the rim while holding it secure against accidental displacement. Said claim also *held* infringed.

2. PATENTS ⚙⇒234—INFRINGEMENT—EQUIVALENCY.

When two machines are alike in their functions, combinations, and elements, it is unnecessary to establish infringement to go further and inquire whether they are alike or unlike in their details.

3. PATENTS ⚙⇒289—SUIT FOR INFRINGEMENT—LACHES.

Delay in bringing suit for infringement may be excused when it was due to the financial inability of complainant to institute and maintain the litigation, and where defendant has not been prejudiced by the delay.

4. PATENTS ⚙⇒222—INFRINGEMENT—SUIT FOR DAMAGES—NOTICE.

Where articles made under a patent are marked as required by Rev. St. § 4900 (Comp. St. 1916, § 9446), no further notice to an infringer is required to sustain a suit for damages for the infringement.

In Equity. Suit by Louis De F. Munger against the Perlman Rim Corporation. On final hearing. Decree for complainant.

William A. Redding and William B. Greeley, both of New York City, for plaintiff.

Edgar M. Kitchin and Melville Church, both of Washington, D. C., for defendant.

MANTON, District Judge. By a bill of complaint filed September 12, 1916, the plaintiff seeks to recover money damages resulting from the alleged infringement of letters patent No. 638,588 dated December 5, 1899, granted to the International Wheel & Traction Company as the assignee of Louis De F. Munger. This patent was subsequently assigned back to Louis De F. Munger shortly prior to the commencement of this action. The patent expired December 5, 1916. The relief sought is a decree decreeing that the patent in suit is valid as to claim No. 4 thereof, and infringed by the defendant as to the same claim. The basis of recovery sought is that of a reasonable royalty.

[1] The plaintiff calls the patent in suit a "combined elastic and pneumatic tire." It covers two separate inventions, and this is conceded by counsel for the defendant. The first of these two distinct inventions relates to the manner of securing the rubber tire to a metallic base or band, and is not involved here. The second of these inventions, and the one concerned here, relates to the manner of securing the metallic tire base on the felly of the wheel as stated in the specifications, "so that these parts may be practically self-united, exerting but

⚙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

slight strain on the bolts securing the base, and so that the base and the tire can be readily and quickly attached to and detached from the felly without the use of special apparatus and while keeping the tire in a state of inflation." The apparent thought of the patentee was to have an easily demountable rim or tire base. His specification refers to the construction of the felly and tire base to assist in the work of slipping the tire on or off the wheel for the purpose of attachment or detachment and in removing the band or tire after it has been placed in position. In referring to the new construction, he says:

"In removing the band it is merely necessary to back off the base slightly from the felly, when it can be easily slipped down and off the inclined surface."

The metallic base is described as "adapted to be detachedly connected to the wheel," and the specifications expressly state:

"It is obvious that various modifications in the form of my improvement may be made without departing from the idea of my invention."

From this it is argued that the structure which is shown in the drawings and described in the specification of the patent is therefore to be regarded as merely illustrative of one possible embodiment of the "idea of my invention," and not as the only form in which the invention can find expression. The specification further describes the invention as:

"The face of the felly is slightly inclined or out of angle with the axis; the outer diameter of the wheel being the smaller to form a tapering fit for the tire base to assist in the work of slipping the tire on and off the wheel for the purpose of attachment and detachment; this angle being slight and hardly discernible in the drawings. The outer side of the base is also longer than the other so as to form an inclined undersurface which will conform to the felly and make the tapered felly described."

Claim No. 4 of the patent in suit relied on is as follows:

"In combination with a tapered felly, a tire; an annular ridged base to which said tire is secured, said base having a tapered undersurface and fitted on said felly substantially as described."

This claim analyzed is found to cover in combination the following elements: First, a tapering felly; second, a tire; and, third, an annular ridged base to which said tire is secured, said base having a tapering undersurface and fitted on said felly.

The defendant manufactures and produces under its patent known as No. 1,052,270, issued February 4, 1913. The defense claims: First, inoperativeness; and, second, noninfringement; and, third, invalidity. The defendant's patent was considered in Perlman v. Standard Welding Co. (D. C.) 231 Fed. 453, and later in Id., 231 Fed. 734, 146 C. C. A. 18. There its patent was held valid and infringed. But the application of the plaintiff's claim to the specific embodiment of the invention shown in the drawing of the patent and in Plaintiff's Exhibits 17, 28, and 30 is obvious.

From the specifications as quoted above the claim need not be restricted to the specific embodiment, and can be interpreted to cover what the plaintiff claims for it under the doctrine of equivalents.

[2] The rule is well established that, when two machines are alike in their functions, combinations, and elements, it is unnecessary to go further and inquire whether they are alike or unlike in their details. Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586.

The patent need not be restricted to the precise relation of the wedge elements shown in the drawing, but is to be interpreted so as to include within its scope the obvious equivalent and arrangement of wedge surfaces in defendant's wheel, the structure of which, so far as it comes within the scope of the invention and suit, performs its function in practically the same way as the patented structure. Johnston v. Woodbury, 109 Fed. 567, 48 C. C. A. 550; Hallock v. Davison (C. C.) 107 Fed. 482.

The plaintiff rests his case upon the proposition that his claim must be so interpreted as to cover within a reasonable range of equivalents that which was new in the art with him, namely, the utilization of the wedge as a means for securing a tire-carrying rim upon a wheel in such a manner that the rim, under tension, produced by the wedge action, hugs the felly tightly when in use, and can be removed readily by freeing the wedge surfaces. Nor should his claim be limited to a structure in which one wedge surface extends all the way across the face of the felly, and the other wedge surface extends all the way across the inner face of the rim, any more than it should be limited to a structure in which the tire is vulcanized on the rim or base, nor to a structure of which the tire forms a permanent part. It should be taken to mean only a rim adapted and intended to have a tire secured therein with such degree of permanence as to resist accidental displacement under ordinary conditions of use. This range of liberality was given to the present defendant by Judge Hunt in Perlman v. Standard Welding Co., supra, where he held that the wedge moving inwardly parallel with the axis of the wheel was the equivalent of the screw mounted radially in the felly and moving outward against the rim.

I am satisfied from the proofs that the plaintiff has shown by credible testimony that in the practical operation of the wheels and rims made under the patent there was no such sticking of the rim on the wheel as to prevent its removal with the ordinary tools carried on the road, and that such a degree of utility exists which justifies sustaining the patent against the claim made by the defendant of inoperativeness, and that therefore the patent has commercial utility.

In Johnston v. Woodbury, 109 Fed. 567, 48 C. C. A. 550, Judge Gilbert said:

"We do not think, however, that the appellant [plaintiff] should be limited in his invention to the use of the angle which appears in the drawings. The specification contains no designation of a specific angle, and it is clear that the patentee contemplated that the angle should be such as would successfully overcome the defects which his invention was designed to remedy. The idea of his invention was to place the rods at an angle, at any angle that would give the necessary oscillatory movement to prevent the banking of the pulp upon the traveling belt, and at the same time not throw it over the sides. The specification clearly indicates this."

See, also, Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 Fed. 845, 48 C. C. A. 72.

The plaintiff produced two wheels (Exhibits 29 and 30), one with a metal felly, and the other with a wooden felly, both made up in exact conformity with the drawing of the patent in suit as to the taper of the felly and the rim. Although this taper was slight, the removal in court was performed with ease, and from the testimony the fact was established that experimental rims made in Hartford in 1890 were removed without difficulty. Thereafter rims were made in a commercial way at the plant of the Munger Vehicle Tire Company at New Brunswick, N. J., and the testimony warrants the finding that these rims were made, sold, and used under the patent in suit, marked with its date, and were readily detachable from the wheels after actual and continued use. I think that the objection urged by the defendant as to the sticking of the rim is not well founded, and, so far as concerns the life of a present-day tire on the Munger rim, it would be quite feasible to adapt the present-day tire to the Munger rim. The invention in suit relates not to the adaptation of the tire to the rim, but to the means of securing the rim detachably upon the wheel.

As to the infringement claimed by the plaintiff, the plaintiff claims that the flange at the rear of the defendant's wheel is a wedge flange, and that it forces the rim further and further away from the wheel, that is, from the cylindrical portion of the wheel which lies between the "little outer wedges" at the outer edge and the wedge flange at the inner edge. In both wheels the further the rim is pressed on the tapered wedge felly or the wedge flange of the felly the further the rim is pressed outwardly or away from the axis of the wheel, and the more is increased the state of tension of the rim which is desired in both cases in order that the rim may hug the felly or its wedge flange the more tightly and be held more securely in place. The only difference in structure is that in defendant's wheel there is an annular strip between the two edges of the felly with which the rim is not in contact, being held therefrom by the wedge flange or at the inner or rear edge, and the "little outer wedged" at the outer or front edge. The defendant's wheel is forced further from this metal strip of the felly, but the distance by which it is so forced is limited by the resistance to the stripping offered by the rim, and is immeasurable except by the most delicate instrument. The only result secured by forcing the rim laterally on the wedge flange is the placing of the rim under tension, and the closer hugging of the wedge flange by the rim which is the purpose of, and the result obtained by, the wedge action of the plaintiff's patented structure. This is well exemplified and shown by Plaintiff's Exhibit 4 offered on the trial. It is a sketch prepared by the witness Duryea, plaintiff's expert, and this sameness of purpose and function is well pointed out in Mr. Duryea's testimony.

The embodiment of defendant's wheel is found in Mr. Munger's contribution to the art, to wit, the utilization of the wedge as a means for securing a tire-carrying rim under tension on an automobile wheel so that the rim shall hug the wheel tightly and be held firmly in position while at the same time it can be detached readily by freeing the wedge surface. Reading claim 4 of the patent in suit, together with the disclosure of the specifications and interpreted with a reasonable range

of equivalents, in my opinion, covers the structure of defendant's wheel. The felly is tapered at one edge, having a wedge flange to be the equivalent of a wedge surface formed on the felly itself. The rim is an annular ridged base, and is adapted and intended in use to have the tire secured to it with a degree of permanence sufficient to resist effectually the accidental displacement of the tire. The rim has a tapered undersurface slightly rounded, but possessing the function of a wedge surface co-operating with the wedge flange of the felly, whereby the rim is forced outwardly and put under tension as it is pressed on by the operation of the bolts and nuts. Upon this rim the tire is placed.

I am satisfied, therefore, that the plaintiff's exhibit (defendant's wheel) infringes the claim in suit. But the defendant claims that the patent is invalid in view of the prior art and because of two patents, one issued to Perkins & McMahon, No. 3,037, dated April 10, 1843, and the other, the British patent of Carberry, No. 7318, in 1895. Defendant's counsel claims that the Perkins & McMahon patent was not limited to car wheels, but was a structure applicable to other vehicles, and that certain set screw bolts were provided for the purpose of bending the rim and wheel together, but the evidence is convincing that this rim of the car wheel could not be placed on or removed from the wheel in the sense suggested by counsel for the defendant, to wit, with the ease or with the ordinary tools, nor would the rim and wheel come apart if the screw bolts were not there, and in no sense was there the ready demounting of the rims; indeed, they could only be removed by great pressure as by hydraulic power. There was, therefore, no possibility of practical use for other than railroad purposes of a wheel with a rim held on merely by bolts with the method of mounting exhibited in the patent in suit. I am satisfied that this patent furnishes no warrant for the conclusions urged by the defendant's counsel. This patent was set up by the defense in the suit of Perlman v. Standard Welding Co., supra, where Judge Hunt said that:

"Patents Nos. 4447–1846, and No. 405710–1889, showing railway car wheel structures with rims intended for being mounted permanently, ought not to be regarded as fairly in the prior art under examination. It strikes me that such structures apply to a foreign art. But, if I am wrong in so regarding them, still they could not be claimed to disclose a solution of a problem in the art of automobile wheels. In the car wheel art the object was to get the rim on just as tight as it could be put on and to mount it nearly with permanency, and in doing so the greatest amount of contact surface was provided between the rim and the wheel body of the car wheel."

In passing it might be noticed that in Judge Hunt's opinion he refers to the Munger patent in considering the prior art, saying that Munger's structure was of little use because the rims became so attached to the wheel body that it required much more labor to remove it than to take the tire from the rim. Evidently Judge Hunt did not have the opportunity for experiment and observation that was afforded this court in the consideration of the merits of the Munger patent, or I think he would have reached a conclusion other than that which is voiced in his observation in this opinion.

The Carberry patent does not show a construction which embodies the inventive thought of the patent in suit, to wit, the securing of a tire-

carrying rim under tension by wedge action upon the wheel body whereby the rim hugs the felly band tightly. There is a distinction between placing the tire-carrying rim under tension and placing it under compression, which is important. When the rim is under tension, it holds itself in place on the wheel through contact under pressure with the felly or its wedge elements, but when the rim is under compression, it is held in place only by those elements, namely, the radial bolts of the Carberry patent which pass through the felly into the rim. If these bolts break off, the rim comes off. I do not think that the Carberry patent anticipates the patent in suit, because it does not disclose the inventive idea covered by that patent. Therefore I conclude that neither of these patents alone can be regarded as sufficient to invalidate the claim in suit or as teaching the art how to realize the advantages of the Munger invention, and offer no defense of invalidity to the plaintiff's claim.

[3] The delay in bringing suit is urged as a last defense and is, of course, a serious one. The bill of complaint was filed September 20, 1916. The patent in suit did expire December 5, 1916, but the long lapse of time is accounted for by the financial inability of the plaintiff herein and his predecessors in interest to bear the expense of a patent litigation. The record discloses efforts to finance the National Wheel & Traction Company, to which the invention covered by the patent was assigned. This company was a promoting or holding company with a small capital. Thereafter the Munger Vehicle Tire Company was organized in December, 1899. This company did manufacture some of the wheels under the patent in suit at New Brunswick, N. J. It is sufficient to say that financial difficulties arose between this and the Rubber Goods Manufacturing Company, bankruptcy proceedings were instituted, and considerable litigation ensued. All the assets of the Munger Vehicle Tire Company were turned over to the National Wheel & Traction Company; the patent in suit remaining in the ownership of the National Wheel & Traction Company. There was considerable negotiation to obtain capital, but in January, 1902, the Munger Automobile Tire Company was organized, located at Trenton, N. J., taking over the physical assets of the National Wheel & Traction Company, excepting the patent in suit. It was not until the latter part of 1915, after bankruptcy proceedings were instituted against the Munger Vehicle Tire Company, that the plaintiff obtained an assignment of his patent, and thereafter obtained sufficient funds to institute this suit.

These circumstances, although briefly stated, show the financial inability of the plaintiff and his predecessor in title to bear the expense of the litigation, and was sufficient to excuse the delay in bringing the suit. Columbia Graphophone Co. v. Search Light Horn Co., 236 Fed. 135.

In Taylor v. Sawyer Spingle Co., 75 Fed. 301, 22 C. C. A. 203, Judge Wales said:

"It has never been held that mere laches, unaccompanied by circumstances which amount to an equitable estoppel, shut out a party from all relief in a court of equity. Knowledge of and long-continued acquiescence by complain-

ant in an infringement may, in special cases, be fatal on a motion for a preliminary injunction, but will not, on a final hearing, prevent the court from granting such relief as may be just and equitable."

[4] Notice of the existence of the patent was given by the plaintiff by marking the manufactured product under the patent with the date of the patent. This was placed upon the wheels manufactured commercially by the Munger Vehicle Tire Company, and was sufficient notice within the meaning of section 4900 of the Revised Statutes.

For the foregoing reasons, a decree will be granted in favor of the plaintiff and against the defendant, directing the defendant to account before a master, and the plaintiff may recover a reasonable royalty upon the patent in suit under the rule established in Dowagiac Mfg. Co. v. Moline Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398.